IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHERIE CARTAGENA,                    :
                                     :    CIVIL ACTION
        Plaintiff,                   :    NO. 17-3461
                                     :
    v.                               :
                                     :
TEMPLE UNIVERSITY HOSPITAL, INC.,    :
                                     :
        Defendant.                   :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         June 27, 2019


        Presently before the Court are the motions for summary

judgment filed by Defendant, Temple University Hospital, Inc.,

and the cross-motion for partial summary judgment filed by

Plaintiff, Cherie Cartagena. After Plaintiff developed carpal

tunnel syndrome in her right dominant hand, took medical leave

for over a year, and showed no significant improvement,

Defendant concluded that it could no longer accommodate

Plaintiff and terminated her employment. As a result, Plaintiff

filed this action alleging: (1) discrimination/failure to

accommodate and retaliation under the Americans with

Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and (2)

retaliation under the Family Medical Leave Act, 29 U.S.C.

§ 2601, et. seq. ("FMLA").[1] For the reasons that follow, the Court will grant Defendant's motions and deny Plaintiff's motion.

## I.    BACKGROUND[2]

### A.    Background on Plaintiff's Employment Position

Plaintiff was initially hired by Defendant in July 1993 as a Phlebotomist. On November 21, 2014, Plaintiff was promoted to Ctyology Prep Technician ("CPT"). The Ctyology Department processes bodily fluids, biopsy tissue, and other specimens for the purpose of diagnosing cancer and other diseases. These specimens are typically taken during surgery while the patients are under anesthesia and then brought to the Ctyology Department. Plaintiff was the only CPT in the department. Plaintiff's direct supervisor was Theresa Castle.

Castle described the essential job functions of a CPT as: (1) filtering and changing stains in the automatic staining machine; (2) lifting and pouring four liter and gallon containers of reagents; (3) preparing and maintaining laboratory

_____

[1]    Plaintiff also asserted claims of FMLA interference and retaliation under the Pennsylvania Worker's Compensation Act, 77 P.S. §§ 1-1031, et seq. Plaintiff concedes that summary judgment is appropriate on these two claims. Thus, judgment will be entered in Defendant's favor on these claims and the Court will not address them further.

[2]    The Court views the facts in the light most favorable to the non-moving party.

reagents; (4) preparing specimens according to policies and procedure; (5) lifting and pouring specimens, including high volume body fluids (three liters); (6) being able to centrifuge, decant, and vortex specimens; (7) stocking and maintaining prep room supplies including unloading cases of reagents, cases of glass slides (greater than twenty pounds), and storing specimen containers in overhead bins and cabinets; and (8) cover-slipping glass slides, which requires fine motor skills. Castle explained that dexterity is a key component of the job and that a CPT needs to use two hands to handle specimens and must be able to write legibly. Defendant's job profile for the CPT position elaborates that a CPT is expected to lift up to 25 pounds for up to a third of the day.

Plaintiff testified, inter alia, that preparing slides requires a certain amount of bilateral dexterity, that she could not prepare a slide with only her left hand, that she regularly had to write details on a small portion of the slides, and that she used both hands throughout her workday. She further testified that the CPT position requires heavy lifting and regularly handling and pouring biohazardous materials including large jars of bodily fluids. However, Plaintiff also testified that, after developing carpal tunnel syndrome, other than the lifting and pouring aspects of the position, she could perform all essential functions of the job.

**B.    Relevant Factual History of Disability and Accommodation**

Plaintiff alleges that on August 26, 2015, she began experiencing carpal tunnel symptoms while performing her CPT duties and took a medical leave of absence starting that day. She was diagnosed with carpal tunnel syndrome shortly thereafter.

On October 22, 2015, Defendant's Manager of Benefits and Absence Management, Richard West, wrote a letter to Plaintiff which included FMLA leave paperwork. Plaintiff completed and submitted the paperwork on November 1, 2015. Defendant approved Plaintiff's leave request on November 3, 2015 for the period of October 21, 2015 through November 1, 2015. Plaintiff does not recall receiving an approval letter. Defendant allowed Plaintiff to remain on medical leave after November 1, 2015, specifically until September 2016. Defendant hired a temporary employee to cover the CPT position and ultimately hired a permanent replacement on August 26, 2016.

At various points during her leave period, West requested status updates from Plaintiff's physicians asking, inter alia, how her medical condition would affect her work. In response to these requests, and on their own initiative, Plaintiff's physicians supplied numerous notes indicating either that Plaintiff could not return to work or could return to work with certain limitations such as no heaving lifting or pushing

or pulling, and no fine manipulation, simple grasping, or keyboarding with her right hand. The Court will remark on only a few of the individual notes which are particularly relevant.

On January 18, 2016, West asked Castle whether Plaintiff's restrictions regarding lifting could be accommodated in the CPT position. Castle responded that the Cytology Department could not accommodate those restrictions. The only possible modification to equipment identified by Castle was that "maybe" Defendant could purchase a hands-free vortexer, but that it was "prohibitively expensive." West discussed potential accommodations with Human Resources as well. West knew that Plaintiff's doctors repeatedly advised that she could not resume her full job duties and that she did not have a projected return date.

After her neurosurgeon cleared her for unrestricted work on February 12, 2016, Plaintiff attempted to come back to work full time on February 22, 2016. However, she left after two hours stating that she was incapable of performing her duties. Plaintiff then remained on leave. On April 4, 2016, Plaintiff had surgery on her right wrist and elbow.

On June 7, 2016, Defendant sent Plaintiff a letter indicating that her medical leave of absence would not be extended until her physician completed a physical capabilities worksheet and a medical update form. On June 30, 2016, Plaintiff

submitted a doctor's note indicating that she would not be able to return to work until further notice. On July 6, 2016, Plaintiff's primary care physician opined that she could not lift over ten pounds, push or pull, or use her right upper extremity. In a July 8, 2016 medical update, Plaintiff's orthopedic surgeon opined that Plaintiff was unable to use her right upper extremity and could not perform the essential functions of her job until a time "TBD."

On July 11, 2016, West emailed the Director of Labor and Employee Relations, Cheryl Devose, and Albert D'Attilio noting that Plaintiff had been on medical leave since August 28, 2015, that Plaintiff had failed to submit a long-term disability claim, and that based on her ADA forms, it did not appear as though Defendant could continue accommodating her disability. West asked whether Defendant could terminate her employment, noting that more than six months of leave had elapsed and that employees have no additional rights beyond six months.

At West's behest, on August 19, 2016, Plaintiff's orthopedic surgeon completed another medical update form concluding that Plaintiff was "unable to resume performing the essential functions of her position" because she was "unable to use [her] right upper extremity." The surgeon also provided that the restrictions would remain in place until a time "TBD."

On August 29, 2016, West sent Plaintiff a letter indicating that her physician had opined that she could not perform the essential functions of her CPT job and did not provide an expected date when she would be able to perform those functions. The letter continued that indefinite leave was not a reasonable accommodation. The letter asked Plaintiff whether she wanted Defendant to consider any additional accommodations. The letter also explained that Plaintiff could apply for other open positions as a form of accommodation.

West followed this letter up with a September 1, 2016 phone call. During the phone call, Plaintiff stated that she knew of no accommodations that would allow her to return to the CPT position. West contends that he advised Plaintiff during this call that she could apply for other positions for which she was qualified. Plaintiff disputes that West advised her of this accommodation.

Nonetheless, also on September 1, 2016, Plaintiff applied for a Medical Technologist: Microbiology position. However, Defendant closed that position without filling it. On the same day, Plaintiff applied for a Medical Technologist: Blood Bank position. Rather than Plaintiff, Defendant hired a prior Temple employee for that position who had extensive blood bank experience. The job description for the Blood Bank position indicates that it requires significant manual dexterity, the

ability to write legibly, and requires lifting up to ten pounds up to two-thirds of the day and 25 pounds up to a third of the day. It also provides that the position requires a bachelor's degree in medical technology, biological sciences, or chemistry.

West memorialized the details of the September 1, 2016 phone call in a September 7, 2016 email to Plaintiff. The email repeated that Plaintiff told him she was unaware of any relevant accommodations and stated that, as discussed, Defendant would terminate her employment if no accommodations could be found.

After being unable to identify appropriate accommodations for Plaintiff and having no indication when she would be able to perform the essential functions of the CPT position, Defendant terminated Plaintiff's employment on September 7, 2016.

According to her testimony, during the interactive accommodation process Plaintiff inquired whether the reagents with which she worked could be purchased in smaller containers. She also testified that she asked about purchasing a machine that would help with the preparation of glass specimen slides but learned that it would be expensive. During her deposition, Plaintiff suggested that Defendant could have accommodated her by having someone else lift objects more than five pounds and by letting her use her left non-dominant hand for writing, grasping, pushing, pulling, and fine manipulation.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a

genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56).

The standard for summary judgment is identical when addressing cross-motions for summary judgment. <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Schlegel v. Life Ins. Co. of N. Am.</u>, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2720 (3d ed. 1998)).

## III. DISCUSSION

### A. Defendant's Motions for Summary Judgment

Plaintiff's remaining ADA and FMLA claims utilize the familiar <u>McDonnell Douglas</u>[3] burden shifting framework. <u>Hatch v. Franklin Cty.</u>, 755 F. App'x 194, 198 (3d Cir. 2018) (non-precedential) (applying the framework to an ADA discrimination claim); <u>Grosso v. Fed. Express Corp.</u>, 467 F. Supp. 2d 449, 458 (E.D. Pa. 2006) (applying the framework to an FMLA retaliation claim).

---

[3]     <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

Under the McDonnell Douglas test: (1) the "plaintiff must first establish a prima facie case;" (2) if successful, "the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action;" and then (3) "the plaintiff [must] prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." Capps v. Mondelez Global, LLC, 847 F.3d 144, 152 (3d Cir. 2017) (internal quotation marks omitted).

### 1. ADA Discrimination

In order to establish a prima facie case of disability discrimination, Plaintiff must show that: "(1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job; and (3) she has suffered an adverse employment decision because of discrimination." Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002).

Defendant asserts, and the Court agrees, that Plaintiff has failed to establish a prima facie ADA discrimination claim. Therefore, the Court will not discuss the remaining McDonnell Douglas factors in regards to this claim.

### a. CPT Related Accommodations

Defendant argues that Plaintiff is not disabled under the ADA in that she is not a "qualified individual with a disability" for the purposes of the ADA. A qualified individual

is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 186 (3d Cir. 2009) (quoting 42 U.S.C. § 12111(8)).

At a minimum, Plaintiff admits that she cannot perform the heavy lifting, carrying, and pouring that is essential to the CPT position without accommodation. Moreover, Plaintiff does not identify any reasonable accommodations that would allow her to perform these aspects of the job.

Plaintiff suggested that Defendant could accommodate her by having other employees perform the heavy lifting and pouring aspects of the position. However, "employers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function." Skerski v. Time Warner Cable Co., 257 F.3d 273, 285 n.4 (3d Cir. 2001). Thus, reallocating these undisputedly essential functions is not a reasonable accommodation.

Plaintiff also suggested that the Defendant purchase chemicals in smaller containers. Even if this were feasible, which Plaintiff has not established, it would only solve one aspect of the carrying and pouring requirements as she would

still be required to carry and pour heavy containers of body fluids and carry other heavy lab equipment.[4]

The evidence establishes that, despite engaging in the interactive process, neither party was able to divine a reasonable accommodation that would allow Plaintiff to perform

_____

[4] Defendant further argues that none of the other accommodations proffered by Plaintiff are reasonable or would allow her to perform the other essential functions of the CPT position. The Court agrees.

Plaintiff suggested that she be accommodated by allowing her to primarily use her non-dominant hand. The evidence, including Plaintiff's testimony, establishes that the CPT position requires regular use of both hands for, inter alia, lifting and pouring and preparing specimens. Castle testified that a person with reduced ability to conduct fine manipulation with the dominant hand could not make a cellblock, coverslip a slide, or write legibly on the small specimen slides and glass tubes. Castle also testified that "every last cc of specimen" must be preserved and that the manner of handling the specimens "directly impact[s] the patient's care." She stated that dexterity is a key component of the CPT position and that efficiency is critical in preparing samples for analysis. Other than Plaintiff's unsupported testimony that she could perform the duties of the CPT job except for lifting and pouring, there is no evidence that she is ambidextrous enough to perform these fine manipulations with her non-dominant hand. See Hohider, 574 F.3d at 187 (providing that the employee has the "burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions").

Plaintiff also suggested Defendant purchase a machine that would allow her to prepare and label specimens. However, Plaintiff does not know whether the machine would be financially feasible and this essential function of the CPT position is but one of many that require the use of both hands and fine motor coordination.

the essential functions of the CPT position. Defendant appears to have instituted the only accommodation that might have allowed Plaintiff to perform the essential functions of this position in the future: a leave of absence. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) ("[F]ederal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future.").

Unfortunately, after more than a year of such an accommodation, Plaintiff's physicians could not indicate when Plaintiff would be able to perform her job. See Moore v. CVS Rx Servs., Inc., 142 F. Supp. 3d 321, 338 (M.D. Pa. 2015) (providing that "to protect employers, courts have placed limits on the extent to which a leave request may even be considered a reasonable accommodation under the ADA," and that the ADA does not require the provision of indefinite leave), aff'd, 660 F. App'x 149 (3d Cir. 2016). Since Plaintiff cannot perform the essential functions of the CPT position with or without any identified reasonable accommodations, she is not a qualified individual with a disability.

**b.    Transfer of Position as an Accommodation**

Plaintiff primarily contends that she could perform the essential functions of the Medical Technologist positions for which she applied and, thus, Defendant should have accommodated her by transferring her to one of those positions.[5] A reasonable accommodation may include reassignment to a vacant position. 29 C.F.R. § 1630.2(o)(2)(ii). In order for a plaintiff to establish that a transfer to a vacate position is a reasonable accommodation, he or she must establish: "(1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." Donahue v. Consol. Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000). Being qualified for the position includes having "the requisite skill, experience, education and other job-related requirements of the employment position." 29 C.F.R. § 1630.2(m).

Under these facts, it is evident that a transfer to the Medical Technologist: Blood Bank position would not have been a reasonable accommodation. First, the job description indicates that the position requires one of three bachelor's

---

[5]    Defendant closed the Medical Technologist: Microbiology position without filling it, thus, it was effectively unavailable. The Court, like the parties, will focus on the Medical Technologist: Blood Bank position.

degrees which Plaintiff indisputably lacks. Therefore, she was not qualified for the job. Second, the position is a promotion from the CPT position in that the pay scale is higher and it is classified as a professional position rather than a technical position. Therefore, the Medical Technologist position is not at or below the level of the CPT position. See Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996) (providing that an employer is "not required to promote [an employee] to a higher level to accommodate his disability"). For these reasons, a transfer to the Medical Technologist position would not have been a reasonable accommodation.[6]

In that Plaintiff could not perform the essential functions of the CPT job with or without accommodation and a transfer to the Medical Technologist position was not a reasonable accommodation, her ADA discrimination claim fails since she cannot establish a prima facie case.

---

[6]     In addition, the Medical Technologist position has similar dexterity requirements and requires the ability to lift at least as much weight, if not more, than the CPT position. It is highly unlikely that since Plaintiff could not perform the essential functions of the CPT position with or without accommodation, that she would be able to perform the essential functions of the Medical Technologist position.

## 2.    ADA and FMLA Retaliation

### a.    Prima Facie Case

Prima facie claims of retaliation under the ADA and the FMLA require the plaintiff to establish: (1) a protected employee activity; (2) an "adverse action by the employer either after or contemporaneous with the employee's protected activity;" and (3) "a causal connection between the employee's protected activity and the employer's adverse action." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (internal quotation marks omitted) (regarding the ADA), superseded by statute on other grounds, the ADA Amendments Act of 2008; Conoshenti, 364 F.3d at 146 (regarding FMLA claims).

The protected activity associated with the ADA and FMLA claims are the same in this case: requesting and using FMLA medical leave. Defendant does not focus on whether Plaintiff suffered an adverse employment action.[7] Instead, Defendant contends that Plaintiff cannot make out a prima facie case

---

[7]    The Court notes, however, that "[i]n order to show that termination was adverse, Plaintiff needs to present evidence indicating that she could have performed her job duties at the time of her termination." Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452, 463 (E.D. Pa. 2005). It is undisputed that Plaintiff could not perform all of the duties of her job when she was terminated.

because she cannot establish that there was a causal connection between the protected activity and her termination.

"With respect to the causation component, the court must consider whether 'a reasonable jury could link the employer's conduct to the retaliatory animus.'" Larochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 698 (E.D. Pa. 2016) (quoting Jensen v. Potter, 435 F.3d 444, 449 n.2 (3d Cir. 2006)), aff'd, No. 17-3349, 2019 WL 1769077 (3d Cir. Apr. 22, 2019). To assess this question, courts typically look at the "temporal proximity between the plaintiff's protected activity and the employer's allegedly retaliatory response and the existence of a pattern of antagonism in the intervening period." Id. (internal quotation marks omitted); see also Capps, 847 F.3d at 152 n.6. (providing the same in connection with FMLA retaliation).

After Plaintiff initially requested medical leave for her carpal tunnel syndrome, Defendant provided her with leave for over a year. In fact, Defendant approved every one of Plaintiff's requests for medical leave over the previous fourteen years of employment. The fact that there was a year period between Plaintiff's initial request and her ultimate termination is not unduly suggestive of retaliatory motive and, instead, given the significant length of time, would suggest the opposite. See Larochelle, 210 F. Supp. 3d at 715 (providing that the fact that a discharge occurs after the challenged action

does not meet the burden of establishing a causal link);

Dogmanits, 413 F. Supp. 2d at 463 ("[A] four month gap between FMLA protected activity and termination will not, in itself, establish causation.").

Likewise, Plaintiff has not provided any evidence of antagonistic conduct by Defendant. Plaintiff's leave was always approved, and she could not identify any instance of retaliation over the course of her career other than her allegations regarding her termination.

Plaintiff points to West's July 11, 2016 email as evidence of retaliatory motive. The email provides:

> Cherie is a Cytology Prep Tech in the Clinical Labs . . . PASNAP Tech and professional union. She has been on medical leave since 8/28/2015 . . . she did not submit a LTD claim after at least 3 reminders and conversations that I have had with her so we stopped her benefits. Attached are the ADA forms. It does not appear that we would be able to accommodate but would you mind confirming?
>
> Can we terminate her? It has been greater than 6 months and PASNAP Tech and prof employees have no additional rights beyond this time frame.

(ellipses in original). Plaintiff argues that because the email references her FMLA leave and indicates West formed the intent to terminate her shortly after receiving three doctors' notes, it shows motive to retaliate for taking leave.

Under these facts, no reasonable jury could conclude that West's email evidences retaliatory motive. After requesting Plaintiff's doctors to provide medical updates, and receiving at

least two responses indicating that Plaintiff would not be able to perform the essential functions of the CPT position for the foreseeable future, and knowing that Plaintiff had been on medical leave for a year and that indefinite leave is not a reasonable accommodation, West sought advice about terminating Plaintiff's employment given that she was not expected to be able to perform the job in the near future. West's inquiry was completely consistent with the relevant law. It is undisputed that indefinite leave is not a reasonable accommodation. See Fogleman v. Greater Hazleton Health All., 122 F. App'x 581, 586 (3d Cir. 2004) (citing cases). There is nothing negative or untoward in West's consideration of the length of Plaintiff's leave and her continued inability to perform the essential functions of her job in determining whether her employment should be terminated. See Conoshenti, 364 F.3d at 151 (recognizing that a period of leave can be a reasonable accommodation when it "would enable the employee to perform his essential job functions in the near future"). Given the lack of causation evidence, the Court concludes that Plaintiff has failed to establish a prima facie case of ADA or FMLA retaliation.

**b.    Defendant's Reason and Pretext**

Even if Plaintiff had made out a prima facie claim, she has failed to show that Defendant's purported reason for

terminating Plaintiff – that she could not perform the essential functions of her position, with or without a reasonable accommodation – was merely pretext for discrimination.

After a defendant provides a facially legitimate reason, the plaintiff must establish that "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 190 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997)). Again, Plaintiff points to West's July 7, 2016 email, arguing that it contradicts Defendant's proffered reason for the termination, indicating instead that West fired her for using medical leave. However, given the inability of the doctors to estimate when Plaintiff would be able to perform her duties, the Court concludes that the email actually supports Defendant's proffered reason and, thus, is not evidence of pretext.

For the forgoing reasons, summary judgment in favor of Defendant on Plaintiff's ADA and FMLA claims is justified.

**B. Plaintiff's Cross-motion for Partial Summary Judgment**

Plaintiff has filed a cross-motion for partial summary judgment which the Court will analyze on an individual and separate basis from Defendant's motions for summary judgment. In her cross-motion, Plaintiff contends that judgment should be

entered in her favor on her ADA discrimination/failure to accommodate claim. Specifically, Plaintiff alleges that there is no genuine dispute as to a material fact regarding Defendant's failure to accommodate her disability by reassigning her to an open, funded position for which she had the necessary skill and education, and for which she could perform essential functions of the job with or without accommodations. See Donahue, 224 F.3d at 230.

Plaintiff suggests the Court ignore the written description and requirements of the Medical Technologist: Blood Bank job and her medical records in favor of her unsupported conclusory deposition statement that she was qualified for the position. Especially viewing the facts in the light most favorable to Defendant, the non-movant, such a statement cannot overcome the objective evidence. See, e.g., Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 308 (3d Cir. 2008) (explaining that a party "cannot rely on their conclusory statements" to defeat (not to mention to obtain) summary judgment). As provided above, since Plaintiff was not qualified for the Medical Technologist position and was not entitled to a promotion, transfer thereto would not have been a reasonable accommodation. Therefore, the Court will deny Plaintiff's motion for partial summary judgment.

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant Defendant's motions for summary judgment, deny Plaintiff's motion for summary judgment, and enter judgment in favor of Defendant and against Plaintiff.

An appropriate order follows.